UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAWNNETTA SMALL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00739-AGF |
| | ) |
| MEGABUS, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Shawnnetta Small for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion, the Court finds that it should be granted. *See* 28 U.S.C. § 1915(a)(1). Additionally, for the reasons discussed below, this action will be dismissed without prejudice for failure to state a claim and for frivolity. *See* 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under 28 U.S.C. § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who has filed a civil action that has been construed as arising under 42 U.S.C. § 1983.[1] There are no defendants listed in the caption of the form

---

[1] Plaintiff has not filled out the jurisdictional section of the form complaint. Instead, in the space provided for federal question jurisdiction, she writes: "They are listed on [a] separate piece of paper." (Docket No. 1 at 3). Elsewhere in the complaint, she refers to various federal criminal statutes, including 28 U.S.C. § 241 (conspiracy against rights) and 28 U.S.C. § 242 (deprivation of rights under color of law). Plaintiff also lists several constitutional amendments, and refers to her rights being violated "under color of law." (Docket No. 1-1 at 20). These references suggest that plaintiff is attempting to bring a 42 U.S.C. § 1983 action, which provides monetary relief to individuals who have been deprived of their constitutional rights. *See Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (explaining that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails").

complaint, or in the section for listing the parties. (Docket No. 1 at 1-2). After reviewing the substance of her claims, however, it appears that she intends to sue at least twenty-eight defendants:  (1) Megabus; (2) Walmart; (3) Poplar Bluff Medical Center; (4) Courtenay Miller; (5) AskNow.com; (6) Missouri State Police; (7) Nashville Police; (8) Psychic Source; (9) Omar Montes; (10) Hannah Huffman; (11) Bakari Burns; (12) Henry Oniche; (13) Cassandra Unknown; (14) John Unknown; (15) California Psychics; (16) Orange Blossom Clinic; (17) Pyramid Enlightenment; (18) Tyronn Wise; (19) Mariyah Baker; (20) Ericka Baker; (21) Michael Bluitt; (22) T-Mobile Metro PCS; (23) Kelly Bluitt; (24) Mystic Sense; (25) Krystal Unknown; (26) Haziq Ali; (27) Ingrid Murphy; and (28) Keen.com. Plaintiff does not indicate the capacity in which defendants are sued.

The "Statement of Claim" is confusing, disjointed, and extremely difficult to follow. It consists of a dense narrative that introduces events without any context, fails to properly identify defendants, and takes place in several different locations, including Tennessee, Georgia, Alabama, North Carolina, and Missouri. Plaintiff relies heavily on conclusory language, and asserts a number of fantastical claims lacking any factual underpinnings.

As best the Court can tell, plaintiff begins in 2017, stating that her phone had been tapped by defendants Mariyah and Ericka Baker, Miller, Wise, Michael and Kelly Bluitt, T-Mobile, California Psychics, Psychic Source, Ask Now, Mystic Sense, Pyramid of Enlightenment, Huffman, Oniche, and John and Will Unknown. (Docket No. 1-1 at 4). She asserts that these defendants "were telling the psychics horrific things to tell [her]," which was a "huge problem" because she was "addicted to psychics." Plaintiff called defendant Krystal Unknown – who appears to be a psychic – and "started to step up [her] commitment to [Krystal]" by giving her money and taking her to nice restaurants. However, she alleges that Krystal "ended up being part

3

of a ring to human traffic [her and] make [her] look wretched." According to plaintiff, Krystal defrauded her of "millions of dollars" and abused her daughter. She asserts that Michael Bluitt was involved, while Courtenay Miller made fun of her.

Plaintiff believed that Courtenay Miller's "house was bugged," so she left to go to a "beauty supply conference in Atlanta[,] Georgia." There, Haziq Ali "threatened" her regarding her business, and "threatened [her] over back taxes." Plaintiff was then "threatened by 2 men," causing her to flee with her daughter to North Carolina, where she asked to get into a shelter called Safe Alliance. At the shelter, she "went to therapy and rehab." Plaintiff "was still talking to psychics," however, because her addiction "was flaring." The other residents of the shelter "started acting differently," and she came to believe that her phone was "tapped without [her] permission." Plaintiff was also "upset" that her computer had been "bugged," so she "contacted the police." (Docket No. 1-1 at 13). Eventually, she left the Safe Alliance shelter due to purported "death threats and threats [of] legal action from numerous folks."

Upon leaving Safe Alliance, plaintiff returned to Atlanta, Georgia, attempting to get into a shelter there. The process "aggravated" her, so she went instead to Memphis, Tennessee, where she "tried to call different shelters" but ended up in a hotel that "was not very receptive." During this time, plaintiff states that she was "going through [physical] withdrawals and talking to psychics," which caused her to go to the hospital. The hospital told her it could not help her because her "condition was psychological and not physical." Plaintiff asked the hotel staff to "watch out for [her]," as she "was still quite depressed." While at the hotel, she states that she "was being watched and did not know it," and was told by an "advisor on TV" that an "evil being" had "a grip on [her]."

4

In Memphis, plaintiff states that she worked at an establishment called Pure Passion. There, she insists that she was "being monitored and subjected to being photographed for [pornographic] purposes and for marriage trafficking," and that she was being watched "through [her] TV." Plaintiff asserts that she had "cameras following [her] down the streets and making videos about [her]," and that her television threatened her with violence. When she went to the American Best Value Inn, she was told she "owed back taxes," had "bloody pads" thrown into her room, and had a "tapped" television that allowed people "to see in [her] room." According to plaintiff, an establishment called Vlive, along with Horne Lake Elementary, made "pornographic images of [her]," and threatened her "with machine guns."

Before leaving the American Best Value Inn, plaintiff called the FBI and the police because she was upset. (Docket No. 1-1 at 14). Afterwards, she "left Memphis on the Megabus." On the bus, she was "followed and labor trafficked," and asserts that Megabus was "involved in carrying traffickers and constantly trying [to] push [her] back into trafficking." When plaintiff "went through Atlanta to change [busses]," she states that "the place was awash with activity," and when she passed through Alabama, she states that people "were following" her and "were trying to see if they could mind read."

When plaintiff reached Orlando, she received help from the Coalition for the Homeless, and was "accepted into the shelter," where she asserts she "was immediately witness tampered," as well as "tortured and human trafficked." She would also shop at a corner store where "they would witness tamper [her] and…human [traffic]" her. Plaintiff notes that the Lynx Bus station "human [trafficked her] as well." (Docket No. 1-1 at 15). Likewise, she states that she was subjected to human trafficking at Sunlife Groceries, and sex trafficking "at the Coalition."

Plaintiff complains that people – including the Orlando Public School system – were trying to get her to sell her hair company. She asserts this amounted to extortion and violated the RICO Act.

Because of issues she had at the shelter, plaintiff left and was staying "in a field." (Docket No. 1-1 at 16). A few days later, she asserts that "the Hope Team" came to help, and told her "that Bakari Burns wanted to give [her] the royal treatment [at] either the Orange Inn or the Daily Bread." Plaintiff did not want to participate, but was told she could not stay on the streets. So, she went to stay at the Orange Inn. According to plaintiff, defendant Cassandra Unknown called her "a pig," told her she was not approved for food stamps, and "was witness tampering." (Docket No. 1-1 at 16-17).

At the Colonial Inn, plaintiff states that "they were trying to witness tamper [her] and labor [traffic her]." (Docket No. 1-1 at 17). Apparently, she resided at the Colonial with her child, and she claims that unknown persons kept trying to offer her chicken to adopt the child. Eventually, plaintiff's child was removed from her care, and she was given supervised visitation. However, she states that "Cassandra and her caseworker Beatrice [were] acting real funny" and "were crooked."

Plaintiff alleges that she was "arrested for no reason because they lied and said that [she] was panhandling," and pled no contest. On the way to the courthouse, she claims she was "sex trafficked" and that "someone grabbed [her] buttocks in order to act out a movie scene." (Docket No. 1-1 at 18). Plaintiff was taken to a hospital called Aspire, where people tried to "mind read" her and "human trafficked [her]." After three days she left the hospital.

Plaintiff states that she "then grew tired of Miss Cassandra," and after Family Dollar "tried to labor traffic [her]," attempted to buy a Megabus ticket. The ticket counter woman at the

6

Megabus tried to "labor traffic [her]," but she refused. Plaintiff states that the Megabus staff "were in a conspiracy" with a customer, leading her to call the police. She asked Cassandra for a bus ticket, but Cassandra refused. Plaintiff then asked Cassandra for directions to walk, but Cassandra told her she was not "thinking [properly]." She replied that Cassandra was abusive and untrustworthy, and Cassandra "printed out the instructions."

Plaintiff thereupon "started to walk to St. Louis," but was picked up by the police when she "got into Georgia." After being able to identify the president, the police let her go. Plaintiff believes this interaction with law enforcement "was a clever mind reading ploy to see if [she] was part of the color or race team." Later, back on the highway, she was picked up again and taken to the station. At the station, plaintiff was shown "an upside down cross and told…not to come back." (Docket No. 1-1 at 19).

When she reached Nashville, Tennessee, plaintiff was "put into jail," which upset her. She states that while in jail, she "was witness tampered and trafficked." Upon leaving Nashville, she arrived in Memphis, where plaintiff asserts she was "witness tampered" and assaulted. Plaintiff left Memphis and began walking again.

During her walk, plaintiff injured her foot, and "stopped at the Hayti Hospital" where she had surgery. She stayed there for two weeks, then walked to a Hayti rest stop. Plaintiff refused to allow her aunt to pick her up. When police officers arrived at the rest stop, she thought they were trying to "mind read the situation." Eventually, plaintiff began walking along the highway, and the Missouri Highway Patrol "picked [her] up and involuntarily committed [her]." (Docket No. 1-1 at 19-20).

Plaintiff accuses the highway patrol of "human trafficking and trying to witness tamper," as well as mind reading. (Docket No. 1-1 at 20). When she arrived at the facility, more "witness

7

tampering" occurred on behalf of "people in Orlando." Plaintiff was placed into a psychiatric ward, where others tried "to human [traffic] her and witness tamper [her]," though she "said nothing." She underwent forced medication and went to court. On July 20, plaintiff left the hospital and "went with Ingrid Murphy who was a coconspirator." When they arrived in St. Louis, Murphy gave her some clothes. Plaintiff then went to her aunt's home in Cleveland.

Based on these facts, plaintiff alleges that from August 2017 to April 2018, Megabus human trafficked her, sex trafficked her, enticed her into slavery, conspired against her rights, and stalked her "from state to state."

With regard to Mariyah Baker, plaintiff claims that Baker sex trafficked her, witness tampered, extorted her, stalked her "from state to state," and conspired against her rights.

As to Ericka Baker, plaintiff states that Baker sex trafficked her, sexually assaulted her, tortured her, defrauded her of millions, conspired "to commit adoption fraud," assaulted her with a deadly weapon, committed "corporate espionage," and cyberstalked her. Similarly, she contends that Henry Oniche sex trafficked her, assaulted her with a deadly weapon, cyberstalked her, committed corporate espionage, and tortured her "under color of law."

Concerning, Bakari Burns, plaintiff accuses Burns of human trafficking, sex trafficking, sexual assault, torture, child abuse, cyberstalking, and conspiracy against her rights. She states that Orange Blossom Clinic is liable for the exact same reasons.

With respect to Cassandra Unknown, plaintiff alleges that Cassandra starved her and her daughter, and took "kickbacks from [her] abuser." (Docket No. 1-1 at 21).

Regarding Tyronn Wise, plaintiff states that Wise tapped her phone and threatened her with death due to child support payments. He also tortured her, conspired against her rights, cyberstalked her, assaulted her with a deadly weapon, human trafficked her, and sex trafficked her.

8

As to Haziq Ali and Walmart, plaintiff asserts that Ali threatened her life, committed corporate espionage, and human and sex trafficked her, while Walmart engaged in human and sex trafficking.

With regard to Courtenay Miller, Michael Bluitt, and John Unknown, plaintiff alleges that they engaged in human and sex trafficking, torture, fraud, cyberstalking, and invasion of privacy. Meanwhile, she states that California Psychics, Ask Now, Psychic Source, Keen.com, and Pyramid of Enlightenment all "human and sex trafficked [her] through threats of violence and lies," committed fraud by making "fraudulent readings," tortured her, cyberstalked her, and experimented on her by testing "their mind reading skills."

As for Omar Montes, Ingrid Murphy, and the Nashville Police, plaintiff claims they all conspired against her rights, while the Missouri State Police is "responsible for injury for Poplar Bluff trafficking."

Finally, plaintiff asserts that Hannah Huffman human trafficked her, tried to defraud her of millions of dollars, tortured her, and conspired against her rights.

Due to the events described, plaintiff states that she has suffered a brain injury, physical injuries due to assaults, emotional distress, and "alienation of affection from family [and] friends." (Docket No. 1 at 5). She is seeking $1.5 trillion in damages.

## Discussion

Plaintiff is a self-represented litigant who has filed a civil action construed as arising under 42 U.S.C. § 1983. Because she is proceeding in forma pauperis, the Court reviewed her complaint pursuant to 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss this action without prejudice.

9

### A. Missouri State Police

Plaintiff's claim against the Missouri State Police is barred by the doctrine of sovereign immunity. "Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011). The Eleventh Amendment has been held to confer sovereign immunity on an un-consenting state from lawsuits brought in federal court by a state's own citizens or the citizens of another state. *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974). *See also Webb v. City of Maplewood*, 889 F.3d 483, 485 (8th Cir. 2018) ("The Eleventh Amendment protects States and their arms and instrumentalities from suit in federal court"); *Dover Elevator Co. v. Ark. State Univ.*, 64 F.3d 442, 446 (8th Cir. 1995) ("The Eleventh Amendment bars private parties from suing a state in federal court"); and *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) ("Generally, in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). The sovereign immunity provided by the Eleventh Amendment bars suit against a state or its agencies for any kind of relief, not merely monetary damages. *Monroe v. Arkansas State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (stating that district court erred in allowing plaintiff to proceed against state university for injunctive relief, and remanding matter to district court for dismissal).

There are two "well-established exceptions" to the sovereign immunity provided by the Eleventh Amendment. *Barnes v. State of Missouri*, 960 F.2d 63, 64 (8th Cir. 1992). "The first exception to Eleventh Amendment immunity is where Congress has statutorily abrogated such immunity by clear and unmistakable language." *Id*. The second exception is when a state waives its immunity to suit in federal court. *Id*. at 65. A state will be found to have waived its immunity "only where stated by the most express language or by such overwhelming implications from the

text as will leave no room for any other reasonable construction." *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473 (1987). Neither exception is applicable in this case.

The first exception does not apply because the Supreme Court has determined that 42 U.S.C. § 1983 – under which this case arises – does not revoke a state's Eleventh Amendment immunity from suit in federal court. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent"); and *Quern v. Jordan*, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe…that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States"). The second exception is inapplicable because the State of Missouri has not waived its immunity in this type of case. *See* RSMo § 537.600 (explaining that sovereign immunity is "in effect," and providing exceptions relating to the "negligent acts or omissions by public employees arising out of the operation of motor vehicles…within the course of their employment," and regarding "[i]njuries caused by the condition of a public entity's property").

In this case, the Missouri State Police is an instrumentality of the State of Missouri, and is protected from suit by the Eleventh Amendment whether plaintiff is seeking monetary or injunctive relief. Furthermore, there are no exceptions to sovereign immunity present here. Therefore, plaintiff's claim against the Missouri State Police must be dismissed.

**B. Nashville Police**

Plaintiff's claim against the Nashville Police must be dismissed because a police department is a subdivision of local government, and not a distinctly suable entity. *See Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not

juridical entities suable as such"); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities).

Even if Nashville itself is substituted as the proper party, dismissal is still warranted. A local governing body can be sued directly under 42 U.S.C. § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). To prevail on this type of claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016). Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same").

In this case, plaintiff has presented no facts demonstrating that Nashville has an unconstitutional policy, custom, or failure to train. More to the point, plaintiff has not presented any facts against Nashville whatsoever, aside from her conclusion that they conspired against her rights. Therefore, to the extent that plaintiff is attempting to sue Nashville, the claim must be dismissed. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights).

### C. Remaining Defendants

The claims against the remaining twenty-six defendants are subject to dismissal because plaintiff has not demonstrated that they acted under color of law for purposes of 42 U.S.C. § 1983. Furthermore, she has not established that any of the defendants personally violated her constitutional rights.

#### i. Color of Law

In order to state a claim for relief under 42 U.S.C. § 1983, "a plaintiff must allege sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010). With regard to the first element, a defendant can only be held liable pursuant to § 1983 for actions taken under color of state law. *Carlson v. Roetzel & Andress*, 552 F.3d 648, 650 (8th Cir. 2008). *See also Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (stating that § 1983 "imposes liability for certain actions taken under color of law that deprive a person of a right secured by the Constitution and laws of the United States"); *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that § 1983 secures constitutional rights from government infringement, not infringement by private parties); and *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997) (stating that pursuant to § 1983, "the challenged conduct must have been committed by one who acts under color of law").

When a private party acts under color of state law, it can be held liable under 42 U.S.C. § 1983. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). However, a private party may only be held liable "if it is a willful participant in joint activity with the State or its agents." *Gibson v. Regions Fin. Corp.*, 557 F.3d 842, 846 (8th Cir. 2009). In order to state a claim against a private party under § 1983, the plaintiff "must allege, at the very least, that there

was a mutual understanding, or a meeting of the minds, between the private party and the state actor." *Mershon v. Beasley*, 994 F.2d 449, 451 (8th Cir. 1993).

Here, the majority of the defendants named by plaintiff are clearly not state actors. For example, Walmart, Megabus, California Psychics, and T-Mobile Metro PCS are private companies. Certain individuals, such as Tyronn Wise, Courtenay Miller, and Mariyah and Ericka Baker appear to be plaintiff's personal acquaintances. There is no indication anywhere in the complaint that these private companies or individuals were willful participants "in joint activity with the State or its agents."

Some defendants might be state actors, but are not properly identified as such. For instance, based on plaintiff's facts – such as they are – defendant Cassandra Unknown could be a caseworker, though it is unclear whether she works for a private shelter or as a state employee. In any event, even if the Court assumed that certain defendants were state or municipal employees, plaintiff has not established that they acted under color of law. "Generally speaking, a public employee acts under color of law when he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Johnson v. Phillips*, 664 F.3d 232, 239-40 (8th Cir. 2011). This element of a 42 U.S.C. § 1983 claim is satisfied if a defendant acts or purports to act in the performance of his official duties, even if he oversteps his authority and misuses his power. *Dossett v. First State Bank*, 399 F.3d 940, 948 (8th Cir. 2005). However, "[a]cts of officials in the ambit of their personal pursuits are plainly excluded from Section 1983 liability." *Magee*, 747 F.3d at 535. Here, plaintiff's broad allegations of sex trafficking, human trafficking, torture, and the like cannot be said to have been actions "made possible only because the wrongdoer is clothed with the authority of state law."

For all these reasons, plaintiff has not adequately alleged the first element of a 42 U.S.C. § 1983 claim. Therefore, her claims against these twenty-six defendants must be dismissed.

### ii.     Personal Responsibility

Even if the Court assumed that these defendants were acting under color of state law, plaintiff has not shown that any of them is personally responsible for violating her constitutional rights. Liability in a 42 U.S.C. § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

In this case, plaintiff has not presented sufficient factual allegations to establish that any of these twenty-six defendants did anything to violate her constitutional rights. Without any causal connection between a defendant's acts and a constitutional violation, plaintiff's claims must be dismissed.

### D. Failure to State a Claim

Plaintiff's complaint is also subject to dismissal because she has failed to state a claim against any of the twenty-eight defendants in this action. As noted above, to survive initial review under 28 U.S.C. § 1915(e), a plaintiff must demonstrate a plausible claim for relief, which is more

15

than a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. In other words, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *See Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017).

In undertaking initial review, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts." *See Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). Indeed, the Court "is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002).

Here, nothing in plaintiff's complaint raises her right to relief above the speculative level. Most of the allegations are nothing more than unsupported legal conclusions, in which she accuses various defendants of sex trafficking, human trafficking, cyberstalking, conspiracy, fraud, and assault. At no point does plaintiff provide any facts demonstrating that any of the twenty-eight defendants actually did anything to her that could establish such a claim. To take just one example, almost every defendant is accused of either human trafficking or sex trafficking. Nevertheless, plaintiff never explains what she means by trafficking, or presents any facts sustaining her assertion that such trafficking occurred.

For these reasons, plaintiff's claims against all defendants are subject to dismissal for failure to state a claim.

### E. Frivolousness

Beyond her failure to state a claim, plaintiff's claims are frivolous. Pursuant to 28 U.S.C. § 1915, a court may dismiss a complaint as frivolous if it lacks an arguable basis in law or fact.

*Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). When dealing with factual frivolity, courts are given "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Such a dismissal encompasses allegations that are fanciful, fantastic, and delusional. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id*.

In this case, the Court has determined that plaintiff's disjointed claims not only fail to state a claim, but are fantastic and delusional. For instance, plaintiff accuses sixteen separate individuals and businesses of tapping her phone in a vague, concerted effort to use psychics against her. Meanwhile, almost every defendant – including a major corporation, a website, personal acquaintances, and law enforcement – is alleged to have sex, labor, or human trafficked her, even though no attempt is made to explain what this means to her. Throughout the complaint, plaintiff suggests that people are trying to read her mind, that people are watching her through her television, and that there is an interconnected, multistate conspiracy against her, involving persons who have not been shown to have any connection.

The assertions made by plaintiff are clearly baseless. In point of fact, certain statements and sequences in her narrative are so bizarre as to defy a rational understanding. Therefore, plaintiff's claims against defendants must be dismissed on the basis of frivolity. *See Sikora v. Houston*, 162 F.3d 1165, 1998 WL 390444, at *1 (8th Cir. 1998) (unpublished opinion) (affirming district court dismissal of complaint as "delusional and therefore frivolous" where plaintiff alleged the "use of electro staticmagnetic pressure field devices that surround his body in pressure fields of varying degrees and frequencies" and that "caused him to suffer various physical problems");

and *Owens-El v. United States*, 2 Fed. Appx. 652, 658 (8th Cir. 2001) (stating that plaintiff's allegations that the United States Parole Commission, the Federal Bureau of Prisons, and the Federal Bureau of Investigation conspired to conceal the fact that plaintiff might be able to have a prior conviction overturned was frivolous and subject to pre-service dismissal).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim and for frivolousness. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this order of dismissal would not be taken in good faith.

Dated this 3rd day of October, 2022.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE